## Licensing of Municipal Golf Courses

CREAMER, Attorney General, September 5, 1972.—
You have requested our opinion concerning the effect
of the 1971 amendment to the Liquor Code, which ap-
parently permits the licensing of a municipal golf
course in a dry community. In your memorandum
to this Department dated June 19, 1972, you have
asked our advice as to whether or not this amend-
ment takes precedence over the local option pro-
visions of the code.

It is our opinion that the amendment has a very
limited purpose, as described below, with respect to
which it does take precedence over the local option
provisions of the Liquor Code.

The amendment in question is contained in sub-
section (e) of section 461 of the Liquor Code as
follows:

"(e) 'Municipal golf course' as used in this section
shall mean the restaurant facilities at any municipal
golf course open for public accommodation, which are
owned or operated directly or through lessees by a
county, municipality or a municipal authority, several-
ly or jointly with any other county, municipality or
municipal authority, *including any such restaurant
facilities at any municipal golf course situate in a mu-
nicipality where by vote of the electors the retail sale
of liquor and malt and brewed beverages is not per-
mitted"*: Act of September 2, 1971 (Act No. 103), 47
PS §4-461(e). (Italics supplied.)

This definition of "municipal golf course" is
incorporated by reference in section 404 of the
Liquor Code, 47 PS §4-404, in the following manner:

". . . nor shall anything herein contained pro-

hibit the board from issuing at any time a new license for an airport restaurant, or municipal golf course, as defined in section 461 of this act, for the balance of the unexpired license term in any license district . . . "

This language appears to authorize the board to issue a license to a municipal golf course which, according to the definition contained in section 461, includes a municipal golf course situate in a municipality where by vote of the electors the retail sale of liquor and malt and brewed beverages is not permitted. Such an interpretation would come into conflict with the local option provisions contained in section 472 of the code, 47 PS §4-472.

However, a close reading of the definition of "municipal golf course" reveals that it was the Legislature's intent merely to provide a very narrow exception to the local option provisions in cases where municipal golf courses are owned jointly by two or more municipalities. The key words to a proper understanding of the definition are "jointly" and "situate."

"Municipal golf course . . . shall mean the restaurant facilities at any municipal golf course open for public accommodation, which are owned or operated . . . by a county, municipality or a municipal authority, severally or *jointly* with any other county, municipality or municipal authority, including any such restaurant facilities at any municipal golf course *situate* in a municipality where by vote of the electors the retail sale of liquor and malt and brewed beverages is not permitted": 47 PS §4-416(e). (Italics supplied.)

The language following the word "jointly" was intended to cover the situation where two or more counties, municipalities or municipal authorities jointly own or operate a municipal golf course which happens to be situate in a dry municipality.

For example, if two municipalities jointly own a municipal golf course, and one of the municipalities is wet and the other dry, but the municipal golf course is situate in the dry municipality, a license may nevertheless be granted. This would not be true if both municipalities were dry nor can a municipal golf course owned or operated solely by a dry municipality, be entitled to a license.

In our opinion, this interpretation of the amendment gives effect to the language thereof in accordance with the intent of the Legislature, while at the same time maintaining the integrity of the local option provisions. This is in accordance with the policy of statutory construction that conflicting clauses in a statute must be reconciled if it can be done consistent with the main purposes of the enactment: Cammie v. I.T.E. Circuit Breaker Co., 151 Pa. Superior Ct. 246 (1943).